BADGER DYE WORKS and another, Respondents, vs. INDUSTRIAL COMMISSION, imp., Appellant.

*April 2—April 28, 1936.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *C. J. Otjen.*

FOWLER, J.   Ervin R. Rades, an employee of the Badger Dye Works, was injured by backing into an elevator shaft. A few minutes before falling he had left the elevator standing at the ground floor, leaving the gate up.   Somebody moved the elevator to another floor.   The elevator had a "semi-automatic" gate, which, if working properly, would have closed when the elevator was moved.   The claim involved is to recover the fifteen per cent additional compensation imposed by sec. 102.57, Stats., when an injury results from violation of an order of the commission.   The order claimed to have been violated is No. 478, which provides that elevators "shall be kept in safe operating condition, properly lubricated and clean."   The commission found that the order was violated and the additional award was made.   The circuit court set aside the award of additional compensation on the ground that there was no evidence that the order was violated.

The employee was removing laundry from a truck in which he had brought it to the plant.   He left the elevator standing at the street level with the gate raised, took a basket on wheels to his truck, filled it with laundry, and backed from the truck to the elevator, pulling the basket with him, supposing the elevator was as he left it.   Had the gate been in proper order it would have closed and prevented him from

backing into the elevator shaft. That the elevator was not in safe operating condition may be properly inferred from the fact that the gate did not close when the elevator was moved, and evidence summarized as follows: The injured employee testified on two hearings. At the first he testified that the gate "never worked;" that two weeks before he sustained his injury he oiled the elevator, and then told one of the officers of the company that the elevator was not working properly. At the second hearing he testified that the elevator seldom worked; that he had noticed it before he sustained the injury; that he had told one of the principal officers of the company about it three weeks prior to the injury when oiling a spring in the apparatus operating the gate; that the apparatus operating the gate was rusted from the winter steam; that the trouble was the gate did not work; that the gates had not worked properly for a year and a half before his injury. A fellow servant testified that sometimes the gates closed and sometimes they did not; that it was very uncertain how they would operate; that there was trouble at times and then the gates would not work; that the gates used to stick to the slides when the elevator was pulled up; and that he told the president of the company a long time before his own injury about the gates sticking. He had sustained an injury on December 26th, and that of the petitioning employee was on April 19th next previous. An inspector of the commission testified that on May 8th when he investigated the case the gates did not work; that they did not work because the chutes were warped and the gate bound in the guides; and that the condition had existed quite a time. The president of the company admitted that the gates did not function properly at times for want of grease, and that there may have been "something a little bit wrong" when Rades was injured.

Under this statement of facts we are unable to see any fair or reasonable basis for the contention that there was no credible evidence to support the commission's finding. It is

claimed by the respondent that no credence could be given to the testimony of the petitioner upon his second hearing because he made statements upon that hearing that he did not make upon his first. If all his testimony upon the second hearing were rejected, there would still be ample testimony to support the finding of violation of the order involved. Besides, there is no inconsistency between his testimony upon the two hearings. The commission did not go into the matter of additional compensation on the first hearing. They considered only the primary award, as to which there was no dispute concerning liability. More would naturally be said in support of the contention that the order was violated when consideration of that contention was taken up by the commission than when the commission was considering only the primary award. Of course, in order to support a conclusion that the employer failed to keep the gate in proper operating condition the evidence had to show that it was not in such condition, that it did not function at the time, and that the employer knew of its condition or that the condition had existed so long that it ought to have known of it; but the testimony warrants findings of the existence of all of these facts.

It is also contended that a higher degree of proof in case of violations of orders of the commission is required than in ordinary matters before the commission. We fail to discover anything in the statutes requiring such proof. It is said that the one is a penalty, and in actions to collect a penalty greater proof is required. This is not a criminal prosecution, or an action to recover a penalty. It is a hearing to determine whether the petitioner shall be awarded additional compensation, the *quantum* of proof is as fixed by the compensation act, and under that act a finding of violation of an order must be sustained if there is any credible evidence to support it.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter judgment sustaining the award of the Industrial Commission.